UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Gaia Ethnobotanical, LLC, dba Mitragaia, | Case No. 2:22-cv-01046-CDS-NJK |
| Plaintiff | **Order Granting Defendant's Motion to Dismiss** |
| v. | |
| T1 Payments LLC, et al., | [ECF No. 6] |
| Defendants | |

This is a breach of contract and related claims action arising out of alleged non-processing of payments between plaintiff Gaia Ethnobotanical LLC's ("Gaia") customers and defendants.[1] Defendant T1 Payments LLC ("T1") moves to dismiss the amended complaint for failing to state a claim upon which relief can be granted. ECF No. 6. Gaia opposes the motion, arguing that T1 fails to address the full scope of the complaint's allegations and misleads the court regarding the Agreement between the parties. ECF No. 62.[2] For the reasons set forth herein, I grant T1's motion to dismiss (ECF No. 6) and dismiss the complaint without prejudice and with leave to amend.

I.  Background

The following summary is drawn from the First Amended Complaint (FAC). Gaia is an online marketer of an herbal supplement derived from the herb "mitragyna speciosa" (hereinafter "Kratom").[3] FAC, ECF No. 1-1 ¶ 10. Gaia sells most of its products over the internet and accepts payments for its product via credit or debit cards. *Id.* ¶ 11. The complaint alleges that Kratom is considered a "high risk product" much like hemp and cannabidiol (CBD), making it difficult to obtain credit card processing opportunities. *Id.* ¶ 12.

---

[1] Defendant Payvision has since been dismissed from this action pursuant to a joint stipulation. *See* Stipulation to dismiss with prejudice, ECF No. 57.
[2] Gaia's response was originally docketed as ECF No. 10 but refiled as a corrected image as ECF No. 62 pursuant to my order. ECF No. 61.
[3] According to the complaint "Kratom is a type of tree leaf from Southeast Asia that is closely related to the coffee plant." FAC, ECF No. 1-1 ¶ 10.

  In 2020, after learning its prior credit card processor would not be renewing its contract with Gaia, the company's owner (Dan Bower) met with T1's principal owner (Don Kasdon) during Gaia's search for a new credit card processing partner. *Id.* ¶¶ 20–21. After two meetings, Gaia and T1 entered a one-year, renewable Agreement for T1 to provide Gaia payment processing services, including its credit/debit card processing. *Id.* ¶¶ 22–24. Part of that Agreement included Gaia agreeing that T1 only needed to release Gaia's payment processing proceeds "subject to T1 Payments' rights to offset and holdback sums." *Id.* ¶ 24.

  Although unclear as to when, at some point, and after a large sum of money had been amassed, T1 stopped Gaia's ability to continue processing payments. *Id.* ¶ 25. Then, in May of 2021, T1 sent Gaia and other customers an email stating that its "acquirer (Payvision)" terminated the Agreement that permitted T1 to continue processing transactions and therefore their accounts would be terminated on May 31, 2021. *Id.* ¶ 26. T1 advised Gaia that it should direct all requests for refunds to email address refunds@T1payments.com. *Id.* ¶ 27. At the time of the cancellation, T1/Payvision held $353,413.67 in funds owed to Gaia. *Id.* ¶ 28.

  After numerous requests for the return of the aforementioned funds, Gaia initiated this action in the Eighth Judicial District Court in Clark County, Nevada in 2022. The FAC[4] sets forth several causes of action (Conversion, Money Had and Received, Breach of Contract, and Unjust Enrichment) and also seeks declaratory relief. *See generally id.*

  On July 1, 2022, T1 removed this case to federal court on the basis of diversity jurisdiction (ECF No. 1), and thereafter filed a motion to dismiss (ECF No. 6). Gaia filed an opposition to the motion, which was oversized in violation of the local rules. *See* ECF No. 10. T1 filed a motion to strike the oversized brief (ECF No. 11), which I granted (ECF No. 61). However, for purposes of judicial economy, I permitted Gaia to refile its opposition. *Id.* Gaia refiled its opposition in accordance with my order permitting it to do so on September 14, 2023. Min. Order, ECF No 62. T1 was given an opportunity to file another reply (*id.*), but did not do so, so the July 2022 reply (ECF No. 12) stands.

---

[4] The complaint was amended before this action was moved to federal court.

2

## II. Legal standard

The Federal Rules of Civil Procedure require a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal is appropriate under Rule 12(b)(6) when a pleader fails to state a claim upon which relief can be granted. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Id.* Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If a court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), a court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

III.     TI's motion to dismiss is granted in part and denied in part.

TI moves to this dismiss this action, arguing that Gaia fails to state a claim because: (1) it cannot establish that TI breached the contract between the parties; (2) it is not entitled to declaratory relief as set forth in count five; (3) its claim for conversion fails pursuant to the economic loss doctrine; (4) claims two and four are duplicative; and (5) the allegations in its conspiracy claim are insufficient. *See generally* ECF No. 6.

In opposition, Gaia responds that the motion should be denied, asserting that TI withheld relevant portions of the contract at issue in this litigation, and that TI's failure to include the full contract was not only misleading, but consideration of the complete contract demonstrates why the complaint is properly pled and further, why the motion to dismiss is unavailing. *See generally* ECF No. 62.

In reply, TI argues that Gaia fails to cite any allegations in the FAC showing that TI breached any contract provisions, noting that Gaia's opposition attempts to add new allegations not alleged in the complaint to support its opposition. ECF No. 12 at 2.

### A.     TI's motion to dismiss the breach of contract claim (Claim 3) is granted.

The parties do not dispute the existence of a contract[5] between them. *See* FAC, ECF No. 1-1 ¶ 22; TI's Motion to Dismiss, ECF No. 6 at 3–5 (discussing agreement between the parties); Agreement, ECF No. 62-2 at 6–15. Rather, the dispute is over whether Gaia properly alleged an actual breach of the Agreement. TI's motion identifies three alleged breaches in the FAC and, relying on one part of the contract, contends that Gaia failed to allege *how* TI actually breached the contract. ECF No. 6 at 4–5.

---

[5] With limited exceptions, when ruling on a 12(b)(6) motion, a court cannot consider evidence outside the pleadings without converting the motion to dismiss into one for summary judgment and giving the opposing party an opportunity to respond. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003); *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). The exceptions to the aforementioned are: (1) documents attached to the complaint; (2) documents incorporated by reference in the complaint; and (3) matters that are judicially noticeable under Federal Rule of Evidence 201. *See id.* at 907–08. Here, the FAC makes extensive reference to the agreement (which the court interprets as the contract). Accordingly, the court takes judicial notice of the entire Agreement, which was included in Gaia's opposition to the motion to dismiss as Exhibit 1. *See* ECF No. 62-2.

4

In order to bring a breach of contract claim in Nevada, a plaintiff must establish: "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Med. Providers Fin. Corp. II v. New Life Centers, L.L.C.*, 818 F. Supp. 2d 1271, 1274 (D. Nev. 2011). Further, a contract is valid and enforceable if there has been "an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005). Viewing the allegations set forth in the FAC, together with the complete Agreement between the parties, I find that the FAC fails to set forth sufficient allegations to establish a breach of contract claim. T1's Card Payment Processing Agreement (CPPA) for Gaia states that the CPPA provides the "terms and pricing for [Gaia's] website." T1 Payments CPPA, Pl.'s Ex. 1, ECF No. 62-2 at 1. That same Agreement provides that "[s]ubject to the Merchant processing a minimum of $250,000 per month, T1 Payments will maintain rolling reserve at 5% and payout schedule at 5 business days. Should the Merchant fail to process a minimum of $250,000 a month, T1 Payments reserve [sic] the right to institute a payment schedule of 10 business days in arrears with a 10% rolling reserve." *Id.* The Agreement further provides that Section 8.3 permits T1 Payments to "increase the Reserve at any time for any reason in its sole discretion," a right that explicitly survives the termination of the CPPA. *Id.* at 10 (Section 8.2). Further, Section 8.4 of the Agreement permits T1 Payments to continue to hold or deposit Gaia's processed funds as Reserves even after the Agreement terminates. *Id.* When the Agreement terminates, the funds processed, but not yet paid out to Gaia, convert to "Reserves." *Id.* (Sections 8.4–8.5). Under the Agreement, T1 is then permitted to hold onto the Reserves for:

> "a minimum of nine (9) months after the last Card sales, Refund or Chargeback processed under this Agreement, plus the period of any warranty, guarantee, and/or return policy on goods and/or services sold, or until such time as T1 Payments determines that the release of funds to Merchant is prudent, in the best interest of T1 Payments, as determined by T1 Payments, and commercially reasonable based on anticipated risk of loss to T1 Payments, the applicable bank, its third party processors and the Payment Brands."

*Id.* (Section 8.1).

The FAC alleges that T1 violated the CPPA by:

(1) retaining to customer funds instead of paying them out to Gaia within in 5 days (FAC, ECF No. 1-1 ¶ 16) ("Plaintiff suffered losses when TI [] refused to release hundreds of thousands of dollars from Plaintiff's reserve account and merchant account....");

(2) not complying with the CPPA which required T1 Payments to promptly provide Plaintiff with the funds that Plaintiff earned from its customers' transactions, subject to T1 Payments' rights to offset and holdback sum (*id.* ¶ 24); and

(3) That "after Gaia's 'merchant account' amassed a large enough sum of money, T1 Payments [] suddenly terminated Plaintiff's ability to continue processing, then seized Plaintiff's funds using sham justifications." *Id.* ¶ 25.

Gaia further alleges that it has been damaged by TI's action. *See id.* ¶¶ 28, 30–31, 34.

"Contracts must be read as a whole without negating any term." *Fed. Nat'l Mortg. Ass'n v. Westland Liberty Vill., LLC*, 515 P.3d 329, 334 (2022); *see also See Lincoln Welding Works, Inc. v. Ramirez*, 647 P.2d 381, 383 (1982) (holding that where a separate writing is "made a part of the contract by annexation or reference," the writing will be construed as a part of the contract) (quoting *Orleans Hornsilver Mining Co. v. Le Champ d'Or French Gold Mining Co.*, 284 P. 307, 309 (1930)). Here, the Agreement shows different terms between when the Agreement is in full effect and when it is terminated. Specifically, there is a difference between the payout schedule while the Agreement is in effect, and what happens to the funds when the Agreement is terminated. The FAC's allegations establish a breach of contract while the Agreement is in effect, but as alleged, the Agreement was terminated on or about May 28, 2021. *See* FAC, ECF No. 1-1 ¶ 26. Thus, to state a breach of contract claim, Gaia needs to allege facts showing a breach under the termination terms of the Agreement; it does not do so in the FAC. Consequently, TI's motion to dismiss the breach of contract claim is granted. But because it is not clear if amendment would be futile, the motion is granted and the complaint is dismissed without prejudice and with leave to amend.

**B.     T1's motion to dismiss Gaia's claim for declaratory relief (Claim 5) is granted with leave to amend.**

"[A] 'claim' for declaratory relief is not a substantive cause of action at all; it is merely a prayer for a remedy." *Pettit v. Fed. Nat'l Mortg. Ass'n*, 2014 WL 584876 (D. Nev. Feb. 11, 2014). Accordingly, Gaia's claim for declaratory relief is dismissed without prejudice. If Gaia elects to amend, it may add this to its prayer for relief.

**C.     T1's motion to dismiss Gaia's claim for conversion (Claim 1) is granted.**

T1 moves to dismiss Gaia's claim for conversion, arguing that it is barred by the economic loss doctrine,[6] or alternatively, that the claim cannot survive as the FAC fails to allege the essential elements of the claim. ECF No. 6 at 6–9. Gaia argues that the claim is neither improperly pled nor barred by the economic loss doctrine. ECF No. 62 at 19–21.

Conversion is a "distinct act of dominion wrongfully exerted over another's personal property." *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1048 (Nev. 2000) (citation and internal quotation marks omitted)). Conversion does not require a manual or physical taking of property. *Bader v. Cerri*, 609 P.2d 314, 317 n.1 (Nev. 1980), *overruled, in part on other grounds by Evans*, 5 P.3d at 1050. Rather, conversion is the unlawful deprivation of an owner's property by another who assumes *dominion* over the property. *See Studebaker Bros. Co. of Utah v. Witcher*, 195 P. 334, 340

---

[6] I grant T1's motion to dismiss the conversion claim for failing to meet the essential allegations of the claim. But the claim of conversion is not subject to the economic loss doctrine. In general, "the 'economic loss doctrine marks the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby generally encourages citizens to avoid causing physical harm to others.'" *Sadler v. PacifiCare of Nev.*, 130 Nev. 990, 996 (2014) (quoting *Terracon Consultants Western, Inc. v. Mandalay Resort Group*, 125 Nev. 66, 72–73 (Nev. 2009)). "Under the economic loss doctrine . . . economic losses are not recoverable in negligence absent personal injury or damage to property other than the defective entity itself." *Calloway v. City of Reno*, 116 Nev. 250, 262 (2000). The economic loss doctrine does not bar the recovery of purely economic losses when the defendant intentionally breaches a duty that is imposed independently of the obligations arising from contract. *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987); *see Giles v. GMAC*, 494 F.3d 865, 879 (9th Cir. 2007) (analyzing Nevada's economic loss doctrine jurisprudence and explaining that the doctrine does not bar claims "where the defendant had a duty imposed by law rather than by contract and where the defendant's intentional breach of that duty caused purely monetary harm to the plaintiff"). Stated otherwise, it applies to unintentional torts. Conversion is an intentional tort, *Evans*, 5 P.3d at 1050, therefore making the doctrine inapplicable.

(Nev. 1921). Further, conversion may be established by the refusal of a demand for the property. *Blige v. Terry*, 540 P.3d 421, 431 (Nev. 2023) (citing *Ward v. Carson River Wood Co.*, 13 Nev. 44, 61 (1878), *superseded by statute on other grounds as stated in Menteberry v. Giacometto*, 267 P. 49, 50 (Nev. 1928)). "Whether conversion has occurred is … a question of fact for the jury." *M.C. Multi-Family Dev., L.L.C. v. Crestdale Assocs., Ltd.*, 193 P.3d 536, 542–43 (Nev. 2008).

The FAC alleges that T1 improperly exercised control and dominion over the funds Gaia contends rightfully belong to it. *See, e.g.*, FAC, ECF No. 1-1 ¶ 8 (T1 closed accounts and wrongfully split Gaia's merchant funds with Payvision B.V.); ¶ 9 (Defendants illegally misappropriated at least $353,413.67 from Gaia); ¶ 16 (T1 unlawfully withheld funds); ¶ 28 (T1 held on to $353,413.67 in funds owed to Gaia). T1 argues its acts (*i.e.*, withholding the funds) are permitted by the contract. ECF No. 6 at 8. This argument is supported by the plain terms of the Agreement. Accordingly, the FAC fails to properly set for a claim for conversion, because as alleged, TI holding onto the payments in question was not improper nor unlawful. Much like the breach of contract deficiency, Gaia fails to establish how T1 keeping the funds is improper under the Agreement. Thus, T1's motion to dismiss the conversion claim is granted and the claim is dismissed without prejudice and with leave to amend.

### D. T1's motion to dismiss Gaia's unjust enrichment claims is granted.

The doctrine of unjust enrichment applies when there is no legal contract, but the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another or should pay for. *See Snider v. Lithia Real Est., Inc.*, 2011 WL 4062375, at *1–2 (D. Nev. Sept. 12, 2011). The elements are: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation by the defendant of such a benefit; and (3) acceptance and retention by the defendant of such a benefit. *Unionamerica Mortg. & Equity Tr. v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981). An action based on a theory of unjust enrichment is not available when there is an express, written contract or agreement. *Leasepartners Corp v. Robert L. Brooks Tr.*, 942 P.2d 182, 187 (Nev. 1997).

8

Because of the written contract between the parties, Gaia's unjust enrichment claims fail, so I grant T1's motion to dismiss the claim. However, given Gaia's allegations that T1 conspired with former co-defendant Payvision to fraudulently induce it to enter the CPPA knowing it was not authorized to process said payments (*see* FAC, ECF No. 1-1 ¶¶ 13–15), should the contract be deemed unenforceable, Gaia would be free to pursue its unjust enrichment claim. *See WMCV Phase 3, LLC v. Shushok & McCoy, Inc.*, 2013 WL 6858788 (D. Nev. Dec. 27, 2013), *appeal dismissed* (May 12, 2014) (holding that where a plaintiff claimed breach of contract and unjust enrichment in the alternative, and the court later found the contract unenforceable, the plaintiff was free to pursue unjust enrichment despite that it had sued for breach of the contract). So, I dismiss the unjust enrichment claims without prejudice.

## IV. Conclusion

IT IS HEREBY ORDERED that T1's motion to dismiss **[ECF No. 6] is granted**, as set forth in this order. If Gaia chooses to amend the complaint, it must be filed within 14 days of this order and be titled "Second Amended Complaint."

Dated: March 6, 2024

_____
Cristina D. Silva
United States District Judge